995 F.2d 232
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
PACIFICA KIDNEY CENTER, INC., Plaintiff-Appellant,
v.
NATIONAL MEDICAL CARE, INC., Defendant-Appellee.
 No. 91-55925.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 6, 1992.
Decided June 3, 1993.
 
 Before O'SCANNLAIN and RYMER, Circuit Judges and ZILLY,* District Judge.
 MEMORANDUM**
 Pacifica Kidney Center, Inc. ("Pacifica") brought suit against National Medical Care, Inc. ("NMC") and Balboa Internal Medicine Medical Group, Inc. and members of Balboa individually (collectively "Balboa"), under the Clayton Act, 15 U.S.C. §§ 15 and 16, alleging violations of sections 1 and 2 of the Sherman Act. Pacifica alleged damages resulting from (1) a contract, combination, or conspiracy among the defendants to restrain trade in violation of section 1 of the Act, and (2) monopoly and attempt or conspiracy to achieve monopoly in violation of section 2 of the Act. The district court granted Balboa's and NMC's motion for summary judgment. We affirm.[1]
 * Balboa is a professional corporation, operating in the San Diego area, comprising physicians specializing in nephrology, the treatment of kidney disorders. In August 1984, Dr. Roland left Balboa to form Pacifica. Both Pacifica and NMC provide out-patient dialysis services in the San Diego area.
 In February 1984, NMC and Balboa entered into an agreement under which Balboa members served as medical directors for NMC facilities. Balboa received a percentage of the profits from each facility as part of its compensation.
 Pacifica argues the agreement was a restraint of trade under section 1 of the Sherman Act, and that NMC and Balboa engaged in a course of anticompetitive conduct calculated to achieve monopoly power in the outpatient dialysis market in the San Diego area in violation of section 2 of the Sherman Act.
 II
 Section 1 of the Sherman Act provides: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. Only unreasonable restraints of trade are prohibited under section 1. Oltz v. St. Peter's Community Hosp., 861 F.2d 1440, 1445 (9th Cir.1988) (citing Business Elec. Corp. v. Sharp Elec. Corp., 485 U.S. 717, 722 (1988)).
 Pacifica argues that the profit sharing agreement between NMC and Balboa violated section 1. In addition, Pacifica argues that the hiring of Dr. Belo, the monthly meetings between NMC and Balboa, the timing and location of the opening of NMC facilities, and the amenities offered by NMC indicate that NMC and Balboa engaged in a conspiracy to restrain competition under section 1. Pacifica concedes that neither the agreement nor the other activities amount to a per se violation of the antitrust laws. Where, as here, there is no per se violation of the Sherman Act, courts analyze the effect of the alleged restraint under the rule of reason. Id.
 Under the rule of reason, Pacifica has the burden of proving that the agreement between NMC and Balboa, whether explicit[2] or implicit, or other concerted activity unreasonably restrained competition in the relevant market. See Jefferson Parish Hosp. Dist. No. 2 v. Hyde, 466 U.S. 2, 29 (1984); Oltz, 861 F.2d at 1447. That burden necessarily involves an inquiry into the actual effect of the agreement on competition in the relevant market for out-patient kidney dialysis services. See id. "The proper focus is on the structure of the market for the products or services in question--the number of sellers or buyers in the market, the volume of their business, and the ease with which buyers and sellers can redirect their purchases or sales to others." Id. at 45-56 (O'Connor, J., concurring) (characterizing the agreement at issue an exclusive dealing arrangement). The detrimental effect on competition must be substantial:
 
 
 1
 [t]o determine substantiality in a given case, it is necessary to weigh the probable effect of the contract on the relevant area of effective competition, taking into account the relative strength of the parties, the proportionate volume of commerce involved in relation to the total volume of commerce in the relevant market area, and the probable immediate and future effects which pre-emption of that share of the market might have on effective competition therein.
 
 
 2
 Tampa Elec. Co. v. Nashville Coal Co., 365 U.S. 320, 329 (1961).
 
 
 3
 Pacifica's only evidence regarding the structure of the market is Dr. Roland's affidavit, which provides in relevant part:
 
 
 4
 4. Generally, chronic dialysis referrals come from acute dialysis treatment sources. Family physicians and internists refer patients with end-stage renal disease to hospitals and nephrologists, who then make the referrals to chronic dialysis facilities. NMC, through the physicians comprising the Balboa Internal Medicine Medical Group, receives virtually all chronic care referrals in the San Diego area extending from the Scripps Clinic Hospital, in the north, to La Mesa in the east, and to the Mexican border in the south. Through its control of the referring nephrologists, NMC historically has obtained virtually all of the outpatient dialysis referrals from [nine listed hospitals].
 
 
 5
 This evidence is insufficient in itself. Pacifica has not adequately defined the relevant geographic market. As we reasoned in Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd., 924 F.2d 1484, 1490 (9th Cir.1991), "[w]e give little weight to [Pacifica's] conclusory statement" that the relevant market is the San Diego area. Other than Dr. Roland's conclusory statement, Pacifica has offered no evidence regarding current patterns of commerce in dialysis services. In particular, Pacifica has offered no evidence that patients in San Diego seek dialysis only in the immediate area or that there are no outside sources of referrals directing patients into the area. Nor has Pacifica demonstrated that dialysis centers in San Diego are uninfluenced by competitive pressures outside the area. In any event, Pacifica has not demonstrated that if a single firm did achieve monopoly power, dialysis patients in San Diego would be barred from external sources or that providers outside the area would be prevented from quickly entering the area with competing services. In sum, Pacifica has not presented evidence from which a jury could find that the submarket for dialysis services in the San Diego area functions as a separate economic entity and thus has not raised a genuine issue of material fact that the San Diego area is the relevant geographic market. See Rothery Storage & Van Co. v. Atlas Can Lines, Inc., 792 F.2d 210, 218-19 (D.C.Cir.1986) (extended discussion on defining relevant submarkets); see also Brown Shoe Co. v. United States, 370 U.S. 294 (1962).
 
 
 6
 Even if the relevant market were defined, a jury evaluating the structure of the market could not find that the agreement, as it actually operates in the market, has unreasonably restrained competition based solely on Dr. Roland's conclusory statements. Pacifica provides no specific evidence regarding, for example, the existence of other dialysis centers in competition with NMC and Pacifica; the percentage of the total number of dialysis patients in the relevant area who are referred by Balboa physicians; or the number of patients who go to dialysis centers other than those referred by their physicians. Moreover, Pacifica presents no evidence to show that the profit-sharing agreement in any way changed the dynamics of the market: Pacifica has not shown that the market share of NMC has increased, or that the pattern of referrals has changed. Since the evidence presented by Pacifica cannot, by itself, support a finding that competition has been restrained by the agreement, the district court correctly granted summary judgment in favor of Balboa and NMC.
 
 
 7
 Pacifica argues that it does not have to define the effect on competition in the relevant market because the profit sharing agreement would provide an incentive for Balboa physicians to "channel" their patients to NMC facilities. Pacifica argues that the "channeling" of patients in and of itself makes out the requisite injury to competition. Such an approach, however, would effectively amount to per se liability for all agreements that have the effect of encouraging--but not forcing--a patient to choose one provider of medical services over another. The Supreme Court expressly rejected imposing per se liability based upon such an agreement in Jefferson Parish, 466 U.S. at 26-28 (hospital contract required all anesthesiological services for hospital patients to be provided by a single anesthesiology firm). Pacifica's argument on this point must therefore fail.[3]
 
 
 8
 We affirm the district court's grant of summary judgment in favor of NMC and Balboa on the section 1 claims.
 
 III
 
 9
 * "A monopolization claim under section 2 of the Sherman Act 'is composed of two elements: (1) the defendant's possession of monopoly power in the relevant market and (2) the defendant's willful acquisition or maintenance of such power.' " Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd., 924 F.2d 1484, 1491 (9th Cir.1991) (citations omitted). " '[D]efining the relevant market is indispensable to a monopolization claim.' " Id. (citations omitted).
 
 
 10
 Like the section 1 claim, the monopolization claim fails because Pacifica failed to provide evidence defining the relevant market. In particular, Pacifica has failed to provide any specific information from which a jury could determine the market power of either Balboa or NMC. Since market share cannot be calculated from the evidence provided by Pacifica, Pacifica's monopolization claim must fail. We thus affirm the district court's grant of summary judgment in favor of Balboa and NMC on the monopolization claim.
 
 B
 
 11
 "[P]etitioners may not be liable for attempted monopolization under § 2 of the Sherman Act absent proof of a dangerous probability that they would monopolize a particular market...." Spectrum Sports Inc. v. McQuillan, 113 S.Ct. 884, 892 (1993). "[D]emonstrating the dangerous probability of monopolization in an attempt case ... requires inquiry into the relevant product and geographic market and the defendant's economic power in that market." Id. Again, since NMC's market power cannot be calculated from the information provided by Pacifica, the attempted monopolization claim must also fail.
 
 C
 
 12
 Like a section 2 attempt to monopolize claim, a section 2 conspiracy to monopolize claim must include a "dangerous probability of success" element. That being so, Pacifica's conspiracy to monopolize claim lacks merit for the same reason that its attempts monopolization claim fails--Pacifica has failed to demonstrate sufficiently that the agreement between NMC and Balboa will provide NMC with monopoly power in the outpatient dialysis market.
 
 
 13
 AFFIRMED.
 
 
 
 *
 The Honorable Thomas S. Zilly, United States District Judge for the Western District of Washington, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Appellant's supplemental motion to dismiss Richard Villalobos, M.D., is granted. See Fed.R.App.P. 42(b); 9th Cir.R. 42-1
 
 
 [2]
 The actual agreement between NMC and Balboa which gives rise to plaintiff's complaint was never produced by the defendants. Pacifica contends the actual terms of the agreement are not at issue. Rather, Pacifica argues that there is sufficient evidence to establish a profit sharing agreement necessary for recovery under Section 1 of the Sherman Act. The district court correctly observed that "[i]t would be difficult, if not impossible, for the finder of fact to evaluate the effect of the agreement on the conduct of the Balboa members, without having available the terms of the agreement." ER at 252. Production of the original agreement would ordinarily be required under the best evidence rule. Fed.R.Evid. 1002
 Although the district court was correct in concluding that it was impossible to evaluate the effect of the missing agreement, such an evaluation was not required in connection with the motion for summary judgment. It is undisputed that a profit sharing agreement existed between NMC and Balboa. This satisfied plaintiff's burden of proof relating to the agreement for purposes of the motion for summary judgment.
 
 
 [3]
 Pacifica relies on Key Enterprises of Del. Inc. v. Venice Hosp., 919 F.2d 1550, 1559 (11th Cir.1990) (injury from channeling of patient choice is sufficient to satisfy the threshold injury requirement, which is, in effect, a standing requirement; elements of substantive offense must still be made out), vacated, reh'g en banc granted, 979 F.2d 806 (11th Cir.1992). This case has been vacated and we thus need not consider it